(No. 4601. November 8, 1927.)

**W. E. SULLIVAN, Plaintiff and Respondent, v. AMERICAN FRUIT GROWERS, INC., OF ILLINOIS, a Corporation, Defendant and Appellant, and GROWERS EXCHANGE OF EMMETT, IDAHO, a Corporation, Defendant.**

[260 Pac. 1029.]

Agriculture—Produce Distributor—Duties to Grower.

Where distributor of fruit contracted with fruit growers' exchange that exchange should secure members who would execute growers' contracts with the exchange for marketing their products, that the distributor be appointed the exchange's exclusive agent for the sale of all fruit controlled under such contracts, and that advances to growers should be arranged by the distributor, which, with distributor's compensation and exchange's charges, should be deducted from the returns to the growers, and a grower, who had by contract appointed the exchange his exclusive agent for handling all fruit grown by him, furnished apples under a special contract with both the exchange and distributors, induced by their representations that the apples would be used to fill an exclusive order at an attractive price, and that within a few days he would receive the returns, *held* that, such grower not being indebted for advances, the distributor was required to remit either to him or to the exchange, as its agent, and could not satisfy its obligation by merely crediting the exchange on general account covering its indebtedness and that of other growers.

APPEAL from the District Court of the Third Judicial District, for Ada County. Hon. Raymond L. Givens, Judge.

Action in conversion. Judgment for plaintiff. *Modified and affirmed.*

Wm. M. Morgan and E. B. Smith, for Appellant.

"Rescission must be made *in toto.* A party cannot affirm a contract in part and repudiate it in part. He cannot

Publisher's Note.

See Agriculture, 2 C. J., sec. 26, p. 998, n. 31 New.

Payment, 30 Cyc., p. 1191, n. 93.

accept the benefits on the one hand while he shirks its disadvantages on the other." (13 C. J. 623; *Caldwell v. Ruddy*, 2 Ida. 1 (5), 1 Pac. 339; *Bernard v. Fisher*, 32 Ida. 85, 177 Pac. 762.)

Sullivan & Sullivan, for Respondent.

Where a party takes property from the agent of the owner for sale and return of the proceeds to the agent for the owner, with full knowledge of the owner's right to such proceeds, and thereafter places such proceeds beyond the control of the owner, such party is guilty of conversion; and if such party and such agent act jointly in so doing, both are liable for such conversion. (1 Cooley on Torts, 3d ed., pp. 223, 245; Clark & Lindsell on Torts, p. 66 et seq.; 38 Cyc. 2054 et seq.; Kinkead on Torts, sec. 68, p. 122; 21 Ency. Pl. & Pr. 1050, 1051; 16 Ency. Pl. & Pr. 893, 895.)

T. BAILEY LEE, J.—This is an action in conversion. At the time of filing the complaint, and at all times therein mentioned, the defendant and appellant, American Fruit Growers, Inc., of Illinois, was an Illinois corporation doing business in Idaho with its principal offices at Boise; and the defendant, Growers Exchange of Emmett, was a domestic corporation with its principal place of business at Emmett. For convenience, they will hereinafter be referred to respectively as the "distributor" and the "exchange."

On April 28, 1923, a written contract was entered into by the defendants, wherein it was among other things agreed that the exchange should conduct a campaign "for the purpose of securing members who will execute a growers' contract with the exchange for the marketing of their products"; that the distributor be appointed the exchange's exclusive agent for the sale of all fruits "controlled" by it during the year 1923, under and by virtue of such contracts; that the distributor, for its services, should receive a certain, specified compensation; that advances to the growers should be arranged by the distributor, which, together with the dis-

tributor's compensation and the charges of the exchange, should be deducted from the returns to the growers; that, if the net returns on any shipment did not equal such deductions, any deficit should be deducted from the subsequent shipments of the grower; and, if the grower had completed shipment, he should be billed direct for such deficit; that remittances of the net proceeds should be made to the individual members of the exchange. This latter provision was subsequently modified so as to permit payment to the exchange of all moneys due its members.

On May 15, 1923, plaintiff's agent, Ancy Sullivan, therein referred to as the "grower," entered into a written contract with the exchange appointing the latter his exclusive agent for handling and marketing all fruit grown by him during the year 1923. The contract provided that all fruit delivered by the grower might be marketed with other fruit of like character and the proceeds prorated; that all such fruit should be marketed by the exchange as owner, it being empowered to demand and receive the purchase price, accounting to the grower for his share of the proceeds after deducting from the returns its charges as fixed by its board of directors. And it was expressly agreed that the exchange should have a lien upon all fruit delivered for any indebtedness due it by the grower.

The present action was based upon the alleged failure of defendants to account to plaintiff for certain shipments of apples claimed to have been delivered them in the fall of 1923. The allegations of the complaint substantially were: That on or about October 3, 1923, at Emmett, Idaho, defendants represented to plaintiff that they had orders for and had sold two carloads of Jonathan apples which would net plaintiff, f. o. b., Emmett, a stated sum per ton; that they offered to fill such orders in part with plaintiff's apples and agreed that, if he would deliver the same to them, they would ship them in fulfilment of such orders, collect the agreed price thereof, and make return to plaintiff within about eighteen days after shipment; that plaintiff agreed to such proposal, and, relying upon defendant's aforesaid state-

ments and representations, delivered defendants, between October 3d and 8th, a specified tonnage of apples for the purpose and use mentioned, and under the terms and conditions agreed on; that defendants shipped the same, but wrongfully converted the same and the proceeds thereof to their own use, refusing to pay plaintiff anything therefor, to his damage in the sum of $468.05.

The defendant, exchange, defaulted; the distributor answered, fairly controverting all material allegations.· The court trying the cause without a jury found for the plaintiff except as to an agreed price, and entered judgment in his favor in the sum of $348.56. From this judgment the distributor has appealed. The errors assigned may be reduced to two propositions: That the court erred in making its findings and entering judgment, in that the evidence conclusively shows: First, that the net proceeds of the apples amounted to only $303.49, and, second, that plaintiff constituted the exchange his agent and authorized it to market his apples as owner, and to collect and receive the purchase price therefor; and that the distributor prior to the commencement of this action paid to the exchange, for plaintiff, the entire sum of money due him.

The first contention is correct. It not only appears from the record, but is admitted by plaintiff in his responding brief, that the amount due him was the sum of $303.49. As to the second contention, the record discloses, and the court so found, that during the season and prior to the shipment of plaintiff's apples the distributor had loaned the exchange large sums of money for equipment, supplies, operating expenses, and advances to growers; that in order to reimburse itself, it credited the exchange with the net returns from shipments, instead of remitting the proceeds direct, and that, in consonance with such practice, it credited the exchange's account with the amount due plaintiff. Upon these facts, it argues that, under the terms of the plaintiff's contract with the exchange, it was dealing with the exchange as owner of the apples shipped, and has paid plaintiff's agent all moneys due. It, therefore, complains that the court per-

mitted plaintiff to rely upon that part of his contract which constituted the exchange his agent, and to repudiate that part which authorized it to market his fruit as owner. It may be observed here that the distributor did not contract with the exchange as an owner. It specifically undertook to handle fruits and vegetables "controlled by the exchange by virtue of contracts with the members thereof," to wit: grower's contracts "for the marketing of *their* products." (Italics ours.) Furthermore, it was expressly provided by its contract with the exchange that the individual growers should be held liable for any deficiency after applying the proceeds of their shipments upon advances made and expenses incurred. The distributor, by its own insistence that the grower hold the sack, recognized the grower's ownership, and precluded itself from claiming the property handled to be that of the exchange. On the latter theory, it had compelled Peter to pay the debt of Paul, when its contract clearly provided that each grower should be responsible for his own indebtedness. But the controlling fact here is that plaintiff's apples were not shipped under his contract with the exchange, but under a special contract with both defendants induced by special representations either made by them mutually or by one in the assenting presence of the other. The defendants promised, and the plaintiff agreed that his apples would be used to fill two exclusive orders at an attractive price, and that within about eighteen days he, and not another, would receive the returns. These assurances could have been given for no other purpose than to secure from plaintiff apples that he would not otherwise have delivered defendants at the time. It is not for the distributor to say that by crediting the exchange on general account covering the latter's indebtedness and that of other growers it has paid its debt to one who was not to it indebted. Had plaintiff been indebted for advances, there might have been another story. But, upon the evidence the court found he had received none. Again, had the distributor remitted to plaintiff's agent, the exchange, the money due him, its obligation would have been

fully discharged. As it was, both plaintiff's agent and the agent of such agent so manipulated, through mutual understandings and agreements unknown to plaintiff, that the proceeds of his apples never left the distributor's hands. In the absence of a mutual agreement, a debtor cannot satisfy the obligation due his creditor by delivering him an order on the former's debtor: the debtor so ordered to pay might be unable or refuse to do so. The claimed remittance was purely fictitious. Crediting the exchange with the sum due plaintiff was tantamount to delivering plaintiff's agent an order on itself to pay its principal, an order drawn on a debtor that, according to the evidence, was "worse than busted." It was the distributor's duty to forward the proceeds of plaintiff's apples to the plaintiff or to the exchange for him; and so failing it cannot escape liability.

The judgment is modified, with instructions to the trial court to enter judgment in plaintiff's favor for the sum of $303.49; in all other respects the judgment is affirmed. Costs to respondent.

Wm. E. Lee, C. J., and Budge and Taylor, JJ., concur.

Givens, J., disqualified.